## D. NOBLE ROWAN v. SHAPARD, STEVENS & CO.

IN COURT OF APPEALS, AUSTIN TERM, 1884.

*Attachment Lien.*—A writ of attachment levied upon land, creates a lien upon the land, which must be enforced by foreclosure as other liens.

*Constitutional Law Liens.*—Neither the constitution, nor the statutes, of this State, make and distinction between liens created by levy of attachment and those arising *excontractu.*

*Suit—Definition.*—The word "suit," when used in the constitution, or in the statutes, is a very comprehensive term, and applies to any procedure, in a court of justice, by which an individual pursues the remedy which the law affords him.

*Suit—Non-Resident.*—In a suit against non-residents, to give validity to any judgment recovered, it is absolutely essential that the action be joint—that is, *in rem* and *in personam.* Unless the action is *in rem* service upon the non-resident defendant in person is ineffectual for any purpose.

*Statute—Construction.*—Where a law is plain and unambiguous, whether expressed in general or limited terms, the legislation should be intended to mean what they have plainly expressed, and no room is left for construction.

*Jurisdiction.*—When an attachment is sued out and levied upon the land of a non-resident, the District Court alone has jurisdiction of the case, although the amount of the debt sought to be recovered is within the jurisdiction of the County Court.

Appeal from Brazoria county.

On account of the difference in opinion between he Supreme Court and this court, upon the question as to the authority of county and justices' court to enforce attachment liens upon land, this case was

referred by us for decision, at the last Galveston Term, to the Honor-able Commissioners of Appeals. The case comes back to us with their conclusions, and the reasons therefor embodied in the able and learned opinion of Presiding Judge Walker. We have given no little time and consideration to this opinion in the earnest and honest hope that, if wrong in our views, as originally expressed in the cases of Shandy v. Conrales & Logeman, [W. & W. Con. Rept., Sec. 238], and Newton v. Heidenheimer & Co., [2 Tex. Law Reporter 740], we might avail ourselves of this the first opportunity which has been pre-sented to correct our errors in judgment, if such they were. Instead of being convinced of the error of our conclusions, candor compels us to state that the opinion now before us has only tended to con-firm and strengthen us in the correctness of our views, and their maintenance both in reason and in law, as expressed in our previous opinions.

Without going over or recapitulating the points already discussed, we propose to discuss only the new issues made by Judge Walker, in as succinct and brief a manner as possible.

There is no dispute as to the fact that the constitution confers upon the District Court alone original jurisdiction "of all suits for the trial of title to land, and for the enforcement of liens thereon." [Const. V, Sec. 8], and it is admitted that no such like or concur-rent authority is conferred either by the constitution or the laws upon any other court.

Judge Walker seems to think that there is a peculiar, if not con-clusive, force in the word "suit," or rather "suits," as thus used in the constitution. It is insisted by him that the word indicates and means a *suit* instituted primarily *to try* the title or to try the en-forcement of an asserted previously existing lien. In other words, that the term "*suit*" is synonimous with and means *cause of action*. At first blush there might appear to be some plausibility in this posi-tion, especially when it is. considered in connection with Art. 154 Rev. Stats., with regard to attachment proceedings, wherein it is provided that "no such attachment shall issue until *the suit has been duly instituted*, but it may issue in a proper case either at the com-mencement of the suit, or at any time during its progress." "Suit" i sought to be contradistinguished from process or remedy. Is this position tenable ? What does the word "suit" mean ? Chief Justice Marshall, of the Supreme Court of the United States, in

Weston v. The City Council of Charleston, defines the word "suit." He says the term is certainly a very comprehensive one, and is understood to apply to any proceeding in a Court of Justice by which an individual pursues that remedy in a Court of Justice which the law affords him. The modes of proceeding may be various, but if the right is litigated between the parties in a Court of Justice, the proceeding by which the decision of the court is sought is a suit." [2 Peters U. S. Rep. 449]. This definition is adopted by Mr. Bouvier in his Law Dictionary, and he further says that the word, suit, is applied to proceedings in Chancery, as well as in law, and is therefore more general than *action*.

These authorities, we think, fully meet any supposed merit in the distinction attempted to be drawn between *suit* and process or remedy, and when used in our constitution and laws, it is but reasonable to presume that the word was adopted in its enlarged sense, and with a view to the definition thus given it by the highest authority in the United States. In this particular class of cases the process or remedy sought characterizes the suit, and both in legal and common parlance such actions are uniformly called "attachment suits."

Our Statute on attachments contains this provision: "Should the plaintiff recover in the suit, such attachment lien shall be foreclosed as in case of other liens." [Rev. Stats., Art. 180]. In Hillebrand v. McMahon, 59 Tex. 450, this express statute upon the subject was entirely overlooked by the Supreme Court—at all events it is neither commented upon or cited in that opinion.

This provision was inserted in our laws for the first time by the Commissioners appointed to codify and revise our statutes, and it was afterwards passed upon, ratified and adopted by the legislature. It will be seen that those Commissioners term the levy of an attachment *a lien*, and declare that this lien "*shall be foreclosed*," as other liens. How are other liens "foreclosed?" Article 1340 Revised Statutes provides the mode as follows: "Judgment for the foreclosure of mortgages and other liens, shall be that the plaintiff recover his debt damages and costs with a foreclosure of the plaintiff's lien on the property subject thereto (except in judgments against executors, administrators and guardians) that an order of sale shall issue to the sheriff or any constable of the county where

such property may be, directing him to seize, and sell the same as under execution in satisfaction of the judgment," etc.

Presiding Judge Walker contends that the words "suit" and "lien," as used in the constitution, contemplate "a cause of action in which a *lien* is asserted to exist, and which seeks the appropriate remedy—a foreclosure of it by decree aujudicating the lien and an appropriate order to enforce its benefits to the complainant," and that they do not relate to "a mere incident or parasite of the suit itself, created by the legal effect and consequences of the ordinary processes of the court during the progress of the cause." That an attachment "proceeding is not one to *try* a question of lien, it is to acquire a lien by a creditor's diligence against other cred'tors, and the lien arises by operation of law, by force of the levy on the land." That "foreclosure," as it is termed in the statute, is a technical word which must be construed in relation to the subject matter, to convey the idea of a judicial declaration in favor of the plaintiff, adjudging. to him priority of right against the attached land, and awarding him remedial agencies necessary to its enjoyment."

The constitution certainly does not make any discrimination as to the nature and character of the "liens" it has reference to, and the language of the statute most unquestionably does not authorize the distinction sought to be made between liens created by attachments and those created by preexisting contract. On the contrary, the statute expressly names them as *liens* and declares that they shall "be foreclosed as other liens." But it is said that the word "foreclosure" "is a technical word and must be construed in relation to the subject matter," and the rule is invoked in support of his construction "that the intent and meaning of the makers should be followed, although it may seem to be contrary to the letter of the statute." That "the words of an act may be disregarded when it is necessary to arrive at the intention of the lawmakers." In our opinion this rule does not and cannot apply in this instance, however, much it may suit the convenience of courts to invoke it as to acts of ordinary legislation. As above stated Art. 180, of the Revised Statutes was first incorporated into our system of jurisprudence by a commission of gentlemen selected on account of their superior skill and knowledge of the law to codify and revise our statutes. The presumption is, that they at least, knew the force of the language, 'technical" or otherwise, which they saw fit to use and that they *in-*

*tended* the language to mean just what it did and does mean. Where the language, as it is, is plain and unmistakable, under such circumstances as those mentioned, surely we should not be required to go outside of it to hunt up another and diferent meaning from that which it clearly imports. The remedy by attachment was the subject of their deliberations—they were providing a procedure with regard to it unknown or unexpressed in the old law, and it is neither reasonable nor probable that they should have been mistaken as to their intentions, or that they should have used senseless or unmeaning words, or words liable to a construction directly opposed to their ordinary meaning in law and common parlance, if indeed they intended anything at all by Art. 180. And if it should occur that these commissioners were mistaken in the words they used, and used words they did not intend, then it is indeed strange, passing strange, that the legislature should have overlooked and committed the same mistake when they subsequently adopted and ratified the work of the revisors. To our minds there is neither ambiguity in the language or the intention of Art. 180. A general rule of construction admitting of no exceptions, is that "where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction." (Cooley on Const. Lim. (4 Ed.), 68).

If our reasoning be correct, then the whole matter may be stated in a single logical syllogism, viz:

1. The Constitution says, the District Court alone shall have jurisdiction to enforce liens upon land.

2. An attachment writ levied upon land is a lien upon land which must be foreclosed as any other lien in order to be enforced.

3. Consequently, the District Court alone has authority to enforce attachment liens upon land.

It follows from the above inevitably, that the County Court had no jurisdiction to enforce the attachment lien upon the land levied upon in this case, and its judgment assuming such authority, is erroneous and illegal.

It will be observed that up to this point we have been considering the question in its general aspect, and as though it was one pertaining to ordinary writs of attachments, that is, attachments sued out as auxiliaries or incidents of the suit.

Such, however, is not the character of case presented in the record before us.

In this case, Rowan, the plaintiff in error, who was defendant below, was a non resident of Texas at the time of the institution of the suit, and was a citizen of New York. To acquire jurisdiction over him, so as to give validity to any judgment against him in Texas, it was absolutely necessary that the action should have been brought, not only against him personally, but against his property situate in the State of Texas. In other words, to give the court jurisdiction in the case, it was essential that the action should be a joint one, that is, that it should be both *in rem* and *in personam*. Service of citation in the suit might be had upon him personally in conformity with the statutes Arts. 1230 to 1233, Rev. Stats., but such service would have been ineffectual to bind him, unless he had property within the jurisdiction of the court, and steps were taken to subject that property to satisfaction of the judgment prayed for. In cases against non residents, it is the property levied on in the state and not the personal service which gives and upholds the jurisdiction. Attachment is the proper and only remedy by which to bring the action *in rem*. We are aware that a different rule in this state at one time prevailed as announced in Battle v. Carter, 44 Tex., 485, and in Wilson v. Zeigler, 44 Tex., 657. But these cases have long since been overruled, and the correct doctrine is as announced in Pennoyer v. Neff, where it is laid down by the Supreme Court of the United States, that, "A personal judgment is without any validity if it be rendered by a state court, in an action upon a money demand against a non resident of the state, who was served by a publication of summons, but upon whom no personal service of process within the state was made, and who did not appear; and no title to property passes by a sale under execution issued upon such a judgment. The state, having within her territory property of a non-resident, may hold and appropriate it to satisfy the claims of her citizens against him; and her tribunals may inquire into his obligations to the extent necessary to control the disposition of that property. If he has no property in the state, there is nothing upon which her tribunals can adjudicate.

Substituted service by publication, or in any other authorized form, is sufficient to inform a non-resident of the object of the proceedings taken, where property is once brought under the control of

the court by seizure, or some equivalent act; but where the suit is brought to determine his personal rights and obligations, that is, where it is merely *in personam*, such service upon him is ineffectual for any purpose." (95 T. S. p. 914; see also St. Clair v. Cox, 106 U. S. 350; Pana v. Bowler, 107 U. S. 529; Freeman on Judgments, (3 Ed.), sec. 564.

The plaintiffs recognizing the necessity of this procedure in order to give the court jurisdiction of the non-resident Rowan, sued out their writ of attachment, when they filed their petition and as part of it, and had the same levied upon his land situated in Brazoria county, and subsequently obtained service upon him in New York under the statute. The suit was an action *in rem* made so by the attachment. Without the attachment and levy upon land, there could have been no suit of which the court would have had jurisdiction.

Everything then necessary to the essential maintenance of the action was dependent upon the attachment and its levy upon the land. This attatchment was not a "parasite" or a mere "incident" as Judge Walker terms such writs. It was the very soul and vital essence of the suit; but for the attachment, there could have been no defendant properly in the suit" and without the attachment levy on the land, there would have been nothing upon which to base a valid judgment. If but a "parasite," then it is a parasite, which instead of obtaining nourishment, furnished the sources of vitality to the very plant to which it was attached. If but an "incident," then it is an incident upon which its *principal* depends for its very existence. *There were no "contesting creditors" in this case.*

In the inception of the case, the court was asked to enforce an attachment against defendant's property in Texas. His property consisted in land; land was levied upon by the attachment. Had the County Court jurisdiction? If it has not, as we have attempted to show, in cases of auxiliary attachments, when levied upon land, *a fortiori*, it can have none in a case like this, where the attachment writ and it's levy was essential to the existence of the cause of action. The primary object, was to subject the land, when levied upon, to the payment of the debt sued on, and this being so, the object and purpose of the suit was to enforce a right against the land, obtained by virtue of the attachment lien thereon.

To our minds, it is clear, that the District Court alone has juris-

diction in such a case, because the Constitution has declared, that the District Court alone has the authority to enforce liens upon land. In our opinion where the object of the suit was, as in this case, to subject land to the payment of the debt, the suit should have been in the District Court, and not in the County Court, notwithstanding the amount of the debt sought to be recovered, was within the jurisdiction of the County Court. We are fully sustained in this view of the matter, by two cases cited in the opinion of Judge Walker, to-wit: Marshall v. Taylor, 7 Tex. Rep., 231; and Lane v. Howard, 22 Tex. Rep. 7.

In the former case it was held that where a suit was brought in the District Court to foreclose a mortgage upon personal property alleged to be of the value of one hundred and fifty dollars, but given to secure the payment of seventy-five dollars, (which latter sum was within the jurisdiction of a Justice of the peace) that the District Court had jurisdiction; and in the latter case, where in an action on a note for an amount within the jurisdiction of a Justice's Court, given for the balance of the purchase money of real estate exceeding in value the jurisdiction of a Justice, it was held that the suit on the note for the amount due, and to enforce the vendor's lien, was properly brought in the District Court.

As heretofore stated, a review of the whole subject in connection with Judge Walker's able opinion, has only tended to strengthen and confirm us in the conclusion, that liens created by attachments levied upon land, are enforcible only in the District Court under the Constitution and laws of this State, and that to hold otherwise, is doing violence not only to the letter, but also to the spirit and intent both of our constitution and our laws. Such being our earnest and honest conviction of what the law is, we are constrained to decline to adopt the opinion of Judge Walker in this case, and for the reasons stated in this opinion we reverse the judgment and remand the case.

Reversed and remanded.    White, P. J.